# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

TRUMAINE MULLER,

        Petitioner,

v.                                 Case No.: 3:21-cv-1138-MMH-PDB
                                         3:18-cr-85-MMH-PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

      Petitioner Trumaine Muller, through counsel, moves to vacate his convictions and sentences under 28 U.S.C. § 2255 (Civ. Doc. 3; Amended Motion).[1] Muller raises four grounds of ineffective assistance of trial counsel and one claim of cumulative error. The government responded in opposition (Civ. Doc. 4; Response), and Muller has replied (Civ. Doc. 11; Reply). Upon the Court's Order (Civ. Doc. 14; Order), the government supplemented the record (Civ. Doc. 15; Notice).  Thus, the case is ripe for a decision.

---

[1] "Civ. Doc #" refers to docket entries in the § 2255 case, No. 3:21-cv-1138-MMH-PDB. "Crim. Doc. #" refers to docket entries in the criminal case, No. 3:18-cr-85-MMH-PDB. For all pleadings and documents filed in each case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is unnecessary to resolve the Amended Motion. No evidentiary hearing is required because Muller's allegations are affirmatively contradicted by the record or, even if the facts he alleges are true, he still would not be entitled to relief. Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); see also Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

## I.    Background

On September 13, 2018, a federal grand jury returned a four-count Superseding Indictment (Crim. Doc. 26) against Muller. The grand jury charged Muller with (1) distribution of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (3) possession of a controlled substance with intent to distribute, in violation of 21

---

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[3] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

U.S.C. § 841(a)(1) and (b)(1)(C); and (4) the unlawful transport of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Id. at 1–3. On the same day, the government presented a plea offer to Muller through counsel, Jeremy Lasnetski (Civ. Doc. 15-1; Plea Offer). Under the proposed agreement, Muller would plead guilty to Count One, and in exchange, the government would dismiss the remaining three counts and recommend to the Court that Muller receive a two-to-three level downward adjustment under the sentencing guidelines. Plea Offer at 2–27. Muller rejected the plea offer. See Civ. Doc. 4-1. Muller pleaded not guilty and proceeded to trial represented by Lasnetski.

The Eleventh Circuit Court of Appeals summarized the facts presented at trial as follows:

> On November 9, 2016, Tyler Hamilton and his girlfriend, Ariell Brundige, went to work at a Cracker Barrel restaurant. After their shift ended, they were picked up by Chris Williams, a friend of Hamilton's. They wanted to purchase heroin,[4] but they were not able to find any heroin available from their regular dealers. Eventually, at around 10:18 PM, Williams reached out to Trumaine "Lucky" M[u]ller and asked him for two "points" of heroin.
> Williams drove to meet Muller at the Cedar Bend apartment complex, where Muller lived. Muller sold Williams two packets of drugs, which were wrapped in aluminum foil, for $40. At the time of the transaction, Williams and Hamilton observed a yellow Ford

---

[4] We note this was the third time in two days that Hamilton had purchased heroin. The first previous occasion occurred on the night of November 8, when he bought heroin from a dealer named Ross, and the second on the morning of November 9, when he purchased from another dealer named "Chop." Hamilton testified that he immediately used the heroin purchased from both Ross and Chop.

Mustang in the parking lot, a car that Williams had previously
seen Muller drive.

From there, the group went to Hamilton's house so he could get
some personal belongings, because he was planning on spending
the night with Williams. Brundige and Williams waited in the car
while Hamilton went inside his house—and while inside, he
injected himself with half of the drugs that he had purchased from
Muller. He suffered a seizure and paramedics were called to the
house. Williams and Brundige then went to Williams's house,
where Williams divided up the remaining drugs purchased from
Muller. He put most of the remainder into a bottle cap, and gave
Brundige what was left. Williams then injected his share of the
drugs and passed out.

At least several hours later, Hamilton—who had since recovered—
called Williams and asked him to pick him up. Williams did so,
leaving Brundige at his house watching television. When they
returned to the house, Brundige was outside, lying over a bin. They
brought her inside and put her on the couch, where she fell asleep.
At about 1:30 AM, Hamilton started looking up information on
drug overdoses, out of concern that he or Brundige would suffer an
overdose.

Several hours later, Brundige started throwing up, and Hamilton
did not think that she was breathing. He was not able to find a
pulse and called 911. At the direction of the operator, he performed
CPR. When the paramedics arrived, they gave
Brundige Narcan and epinephrine, but she did not recover and
was pronounced dead shortly thereafter.

Michael Calhoun, a detective with the Clay County, Florida,
Sheriff's Office, arrived at Williams's house several hours later.
Though both Williams and Hamilton denied that Brundige's death
was linked to drug use, Williams admitted that he had purchased
drugs in aluminum foil packets from Muller, who was driving a
yellow Mustang, the previous night. He told Calhoun that he had
shared one of the packets with Brundige. When Calhoun returned
to the house later that day, Hamilton also admitted the drug
transaction, giving details similar to Williams'. From there,
Calhoun traveled to the Cedar Bend apartment complex. While he

was on his way, he passed a yellow Mustang, with a man matching Muller's description sitting in the passenger seat of the car. Calhoun began following the car and observed a drug transaction take place. After the sale, Calhoun effected a traffic stop and searched the car, finding aluminum foil, a purse containing nearly $2,000 in cash, and a cell phone.

When Brundige's autopsy revealed that she had died of a fentanyl overdose, the police conducted a controlled purchase from Muller to see if he was selling fentanyl. Debra Christopher, one of Muller's customers who had since become a confidential informant, purchased what were, at least ostensibly, heroin and crack cocaine from Muller. The drugs were delivered to her in aluminum foil packets, and one of the packets contained a mixture of heroin and furanylfentanyl. A month later, the police arrested Muller and searched his apartment, finding crack cocaine, a mixture of cocaine and furanylfentanyl, a significant amount of cash, a firearm, and other drug paraphernalia. Muller was subsequently indicted on four counts, two of which he contested: distributing a controlled substance resulting in death, in violation of 21 U.S.C. § 841 (Count 1), and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924 (Count 4).

<u>United States v. Muller</u>, 819 F. App'x 701, 704–05 (11th Cir. 2020) (footnote in original but renumbered).

After the completion of the presentation of the evidence at trial, as to Count One of the Superseding Indictment, the Court instructed the jury:

> [Muller] can be guilty of the crime charged in Count One only if all the following facts are proved beyond a reasonable doubt:
>
> (1) [Muller] distributed a mixture and substance containing a detectable amount of fentanyl; and
>
> (2) [Muller] did so knowingly and intentionally.
> …

> If you determine that [Muller] distributed the
> controlled substance as charged in Count One, you
> must also determine whether [Brundige's] death
> resulted from the use of the controlled substance
> distributed by [Muller]. To establish that [Brundige's]
> death resulted from the use of the mixture and
> substance containing a detectable amount of fentanyl
> distributed by [Muller], the Government must prove
> that [Brundige's] use of the fentanyl distributed by
> [Muller] was the "but for" cause of her death.
>
> "But for" causation is proven when you find beyond a
> reasonable doubt that had [Brundige] not taken the
> fentanyl distributed by [Muller], then [Brundige]
> would not have died.

Crim. Doc. 81 at 12–13. Muller did not object to the instruction. Crim. Doc. 90 at 150.

The jury found Muller guilty on all Counts (Crim. Doc. 82; Verdict). Muller appeared for sentencing on May 6, 2019 (Crim. Doc. 107; Sentencing), at which time the Court sentenced Muller to imprisonment for life on Count One, 360 months as to Counts Two and Three, and 120 months as to Count Four, all to run concurrently, followed by concurrent terms of supervised release of six years on Counts One through Three and four years on Count Four (Crim. Doc. 98; Judgment).

Muller appealed to the Eleventh Circuit, raising the following arguments:

> (1) the district court abused its discretion by allowing evidence of
> an uncharged drug transaction without prior notice from the
> government, in violation of Federal Rule of Evidence 404(b); (2) the

court abused its discretion by allowing the government to introduce "historical cell site mapping" to collaborate the testimony of the government's key witnesses; (3) the government's arguments during rebuttal improperly shifted the burden of proof and deprived him of a fair trial; (4) his conviction or sentence for Count One should be set aside, under plain error review, because evidence established that an intervening act occurred that absolved him of criminal responsibility for the victim's death; and (5) the court plainly erred by not instructing the jury that his acts were the proximate cause of the victim's death and that his drug offenses had to be committed willfully.

Muller, 819 F. App'x at 704. The court of appeals rejected these arguments, affirming Muller's convictions and sentences. Id. at 713. Muller then petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court denied certiorari review on November 9, 2020. Muller v. United States, 141 S. Ct. 827 (2020); (Crim. Doc. 135). Muller timely filed his original § 2255 motion on November 9, 2021 (Civ. Doc. 1). The Amended Motion followed only to include Muller's signature.

## II.    Governing Law

Under Title 28, United States Code, § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims,

and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184–86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). The Supreme Court recognizes that a petitioner's claim that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether the petitioner has satisfied the first requirement, that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, given all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Scott v. United States, 890 F.3d 1239,

1258 (11th Cir. 2018) (internal quotation marks and citation omitted). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. But because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman v. United States, 871 F.3d 1215, 1221–22 (11th Cir. 2017). Moreover, a § 2255 movant is not entitled to a hearing, much less relief, "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

## III.    Discussion

Muller alleges he was denied his right to effective assistance of counsel at trial. Amended Motion at 5–11. Specifically, he alleges trial counsel was ineffective because he failed to: (1) properly explain potential sentencing consequences, which led Muller to reject a favorable plea offer; (2) request a jury instruction on intervening act or make an argument regarding the intervening act during his motion for judgment of acquittal; (3) request a jury instruction that required the prosecution to show willfulness; and (4) object to the verdict form which only required the jury to find that the victim died "as a result of the use of fentanyl distributed by defendant," rather than the requiring the drugs to be the "but for" cause of the victim's death. Id. at 5–10. Additionally, Muller suggests that the cumulative effect of the four grounds he identifies denied him due process and effective assistance of counsel. Id. at 11.

### A. Ground One

Muller first alleges trial counsel was ineffective for failing to "properly explain the potential sentencing consequences under the federal sentencing guidelines." Amended Motion at 5. Specifically, Muller suggests counsel "did not fully inform him or inform him at all" that the government would likely file an information to trigger a mandatory life sentence on Count One under 21 U.S.C. § 851 ("851-enhancement"), or that conceding guilt on Counts Two and Three would "very likely" subject him to a thirty-year sentence on those counts.

10

Muller avers that had he been so advised, he would have accepted a plea offer from the government in which the government would have recommended a twenty-year sentence on Count One if he had pled guilty to that count.[5]

There is generally no constitutional right to plea bargain. Weatherford v. Bursey, 429 U.S. 545, 561 (1977). Nevertheless, in the companion decisions of Missouri v. Frye, 566 U.S. 134 (2012), and Lafler v. Cooper, 566 U.S. 156 (2012), the Supreme Court clarified that the Sixth Amendment right to effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam) (footnote omitted). As such, Strickland's two-part inquiry applies to claims that counsel provided ineffective assistance in the plea process. Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). Notably, failure by defense counsel "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused" constitutes deficient performance. Frye, 566 U.S. at 145. To establish prejudice, a petitioner must show a reasonable probability that but for counsel's deficient performance:

---

[5] Contrary to Muller's assertions, the Plea Offer did not include a promise for the government to recommend a specific sentence (like twenty years), but rather agreed to recommend a downward adjustment of his sentencing guidelines. See Plea Offer.

> (1) "'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of the intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction and sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed."

Osley, 751 F.3d at 1222 (citing Lafler,566 U.S. at 164, and Frye, 566 U.S. at 147).

Here, Muller has failed to show that counsel performed deficiently. Indeed, Muller's own allegations of deficiency are highly ambiguous, stating that counsel "did not fully inform him or inform him at all" about the potential for the section 851-enhancement and potential sentences for a conviction on Counts Two and Three. Yet it is apparent from the record that counsel did inform Muller of the Plea Offer because on September 19, 2018, Muller signed an "Acknowledgment of Plea Offer" in which he acknowledged he "received the Plea Agreement sent on September 13, 2018, that [he had] fully discussed it with [his] attorney, and that [he] reject[ed] it." Civ. Doc. 4-1. Moreover, any assertion that Muller was completely unaware of the potential 851-enhancement and possible sentences under such an enhancement is refuted by the record. Muller had an attorney prior to Lasnetski who affirmed in open court that he had discussed the potential 851-enhancement with Muller. Crim. Doc. 124 at 7. Additionally, on September 19, 2018, at Muller's arraignment on

the Superseding Indictment, where he was represented by Lasnetski, the prosecutor specifically discussed the potential sentences without the enhancement as well as the potential sentences with the enhancement. Crim. Doc. 125 at 9–12, 13–14. At that time, the prosecutor noted that he had presented a plea offer to Muller and, if Muller did not accept before the deadline, Muller would be eligible for the 851 enhanced penalties. Id. at 12–13. These record conversations refute Muller's contention that he was unaware of the potential enhancement and resulting penalties.

Moreover, the Court will not deem counsel's advice deficient based on an alleged failure to advise Muller that his concession of guilt as to Counts Two and Three (a concession not yet made at the time in question) "very likely would" subject him to a thirty-year term of imprisonment. To do so would be to find effective assistance only where counsel can accurately predict the Court's future actions before trial and a sentencing hearing are held. See Gordon v. United States, Case No. 3:12-cv-1265-J-34JRK, 2015 WL 413102, *8 (M.D. Fla. January 30, 2015) ("Defense attorneys have no constitutional duty to forecast

their client's sentence." (citing <u>Cooks v. United States</u>, 461 F.2d 530, 532 (5th Cir. 1972))).[6]

Even assuming arguendo that counsel was deficient, Muller has failed to show prejudice. The Court finds no reasonable probability that Muller would have accepted this plea offer if more fully advised by counsel. As indicated above, the record establishes Muller not only knew of the potential for the 851-enhancement, but also understood the potential sentences with and without that enhancement. Muller was advised on the record multiple times that without the enhancement, he faced a minimum mandatory term of twenty years imprisonment up to life imprisonment as to Count One, a maximum term of twenty years imprisonment as to Counts Two and Three, and a maximum term of ten years imprisonment as to Count Four. Crim. Doc. 119 at 7–10; Crim. Doc. 123 at 6–12; Crim. Doc. 125 at 9–12. Muller confirmed he understood the potential sentences. Crim. Doc. 119 at 10; Crim. Doc. 123 at 7, 9, 12; Crim. Doc. 125 at 12. Muller was further advised on the record that, with the 851-enhancement, a conviction for Count One would require a minimum mandatory term of life imprisonment and convictions on Counts Two and

---

[6] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Three would carry a maximum term of thirty years imprisonment. Crim. Doc. 125 at 13. Muller advised the Court that he understood the penalties he faced if the government filed the 851-enhancement. Id. at 13–14. Because the record establishes Muller was aware of his 851-enhancement eligibility and potential sentences, the Court cannot find that any further elaboration on the 851-enhancement would have caused Muller to accept the government's offer.

Further, even before the prosecutor made the plea offer, Lasnetski represented that the case was "trending towards trial." Crim. Doc. 116 at 2. At trial, Muller disputed his responsibility and guilt as to Count One. See Crim Doc. 88 at 6; Crim. Doc. 90 at 156–157, 204, 216, 233; Crim. Doc. 106 at 22–23. Even after the jury verdict, Muller maintained his innocence to Count One, insisting he was "not responsible for the death." Sentencing at 4–5, 7, 30–31. Muller stated, "I can't accept that to take a life sentence for something that I didn't do." Id. at 31. These statements are indicative of an unwillingness to plead guilty to such an offense. See Osley, 751 F.3d at 1224–25 ("While Osley's denial of guilt surely is not dispositive on the question of whether he would have accepted the government's plea offer, it is nonetheless a relevant consideration."). Further, Muller has pointed to no evidence to support the assertion he desired to accept a plea agreement prior to his conviction and sentence, and his mere self-serving statement made now does not persuade this Court. See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)

15

("Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."). Accordingly, relief on the claim in Ground One is due to be denied.

### B. Ground Two

Muller asserts counsel was ineffective for failing to request a jury instruction on intervening act or argue in his motion for judgment of acquittal that an intervening act caused the death of the victim. Specifically, Muller asserts Hamilton's failure to seek aid for Brundige for hours despite knowing that the same drugs she ingested had caused him to overdose and need emergency medical treatment cut off Muller's criminal liability under 21 U.S.C. §841(b)(1)(C).[7]

As an initial matter, the Court notes that Muller raised a similar issue on direct appeal, and the Eleventh Circuit found it "[could not] conclude that there is error, much less plain error" in the Court's failure to sua sponte grant a motion for judgment of acquittal based on Hamilton's actions creating an intervening act to cut off criminal liability. Muller, 819 F. App'x at 711–12.

---

[7] Muller acknowledges that the Eleventh Circuit has not expressly decided whether an intervening act can cut off criminal liability for the death resulting enhancement of 21 U.S.C. § 841. Amended Motion at 6.

Section 841 provides that if a person distributes a controlled substance "after a prior conviction for a felony drug offense has become final" and "death . . . results from the use of such substance," the person shall be sentenced to life imprisonment. 21 U.S.C. § 841(b)(1)(C). The Eleventh Circuit has not decided whether an intervening act can foreclose culpability under § 841. U.S. v. Rodriguez, 279 F.3d 947, 951 n.5 (11th Cir. 2002). However, even assuming arguendo that an intervening act could foreclose that application, Muller has not shown a reasonable probability that such an argument in counsel's motion for judgment of acquittal or a request for such a jury instruction would have been successful and, thus, changed the outcome of the proceeding.

In Rodriguez, the Eleventh Circuit generally explained the circumstances in which an intervening act could cut off criminal liability for a death:

> Generally, one may be held criminally liable for a victim's death even where medical negligence or mistreatment also contributed to the victim's death. See Carolyn Kelly MacWilliam, Annotation, Homicide: Liability Where Death Immediately Results From Treatment or Mistreatment of Injury Inflicted by Defendant, 50 A.L.R.5th 467 (1997). In order to be entitled to a defense, there must have been gross medical negligence and such gross negligence must have been "the sole cause of the victim's death." Id. See also 40 Am.Jur.2d Homicide § 18 (1999) ("Negligent treatment or neglect of an injury will not excuse a wrongdoer unless the treatment or neglect was the sole cause of death…."); Rose v. State, 591 So.2d 195, 196 (Fla. 4th DCA 1991) ("'[A] defendant cannot

> escape the penalties for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection….'") (quoting <u>Hallman v. State</u>, 371 So.2d 482, 285 (Fla.1979)).

<u>Rodriguez</u>, 279 F.3d at 951–52. Muller has pointed to no facts which would support the conclusion that Hamilton's negligence was the sole cause of Brundige's death. Without such evidence, counsel cannot be deemed ineffective for failing to make such an argument in his motion for judgment of acquittal. Moreover, the Court instructed the jury that the government had to prove the victim's use of the drugs distributed by Muller was the "but for" cause of her death, meaning that if Brundige had not taken the fentanyl distributed by Muller, she would not have died. <u>See</u> Crim. Doc. 81 at 12–13. After being so instructed, the jury found Muller guilty, inherently finding that Muller's drugs were the cause of Brundige's death. This is true despite trial counsel's argument to the jury that Hamilton had caused Brundige's death. Crim. Doc. 90 at 219. Thus, it cannot be said that the jury would have found Hamilton's actions or negligence to be the "sole" cause of Brundige's death as doing so would be in contradiction to its verdict. On this record, Muller has failed to show a reasonable probability the result of the proceeding would have been

different had counsel made the intervening act argument or requested the instruction. Relief on the claim in this Ground is due to be denied.

## C. Ground Three

Muller next contends counsel was ineffective for proposing jury instructions which did not require the government to prove the drugs distributed by Muller were the proximate cause of Brundige's death or that Muller acted willfully. Amended Motion at 8. The United States Supreme Court has held that the language of § 841 requires that the use of the drug distributed by the defendant be the "but for" cause of the victim's death. Burrage v. United States, 571 U.S. 204, 218–19 (2014). Moreover, the Eleventh Circuit and numerous other circuit courts have held that § 841 does not require a showing of proximate cause, foreseeability, or willfulness. United States v. Webb, 655 F.3d 1238, 1250–55 (11th Cir. 2011) ("[W]e join several of our sister circuits and hold that § 841(b)(1)(C)'s enhanced penalty requires only proof that the death resulted from the victim's use of a controlled substance dispensed by the defendant.") (citing decisions from the 1st, 3rd, 4th, 8th and 9th Circuits[8]); United States v. Jeffries, 958 F.3d 517, 524 (6th Cir. 2020) (rejecting application of a proximate cause standard in favor of but for

---

[8] United States v. De La Cruz, 514 F.3d 121 (1st Cir. 2008); United States v. Houston, 406 F.3d 1121 (9th Cir. 2005); United States v. McIntosh, 236 F.3d 968 (8th Cir. 2001); United States v. Robinson, 167 F.3d 824 (3d Cir. 1999); United States v. Patterson, 38 F.3d 139 (4th Cir. 1994).

causation); <u>United States v. Harden</u>, 893 F.3d 434, 447–49 (7th Cir. 2018) (finding no proximate cause requirement for § 841(b)(1)(C) and noting "due to the extremely hazardous nature of drug distribution, a policy of strict liability when death occurs fits the statutory language and its evident purpose. . . . this criminal statute treats death as categorically foreseeable, regardless of whether this particular defendant foresaw or should have foreseen such a result."); <u>United States v. Burkholder</u>, 816 F.3d 607, 617 (10th Cir. 2016) (holding § 841 does not require proof of proximate causation). Counsel cannot be deemed ineffective for failing to raise a meritless argument. <u>See</u> <u>Freeman v. Att'y Gen.</u>, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). Thus, Muller is not entitled to relief on this Ground.

### D. Ground Four

Muller also maintains counsel failed to object to the causation language on the verdict form. Amended Motion at 9. Muller suggests the verdict form only required the jury find the victim died "as a result of" the drugs Muller distributed, rather than requiring the drugs be the "but for" cause of Brundige's death. <u>Id.</u> This contention is unavailing. Notably, jurors are presumed to follow a district court's instructions. <u>U.S. v. Almanzar</u>, 634 F.3d 1214, 1222 (11th Cir. 2011). Here, the Court instructed the jury that it "must follow the law as [the Court] explains it . . . and must follow all of [the Court's]

20

instructions as a whole." Crim. Doc. 81 at 2. Consistent with <u>Burrage</u>, the Court further instructed the jury that to find Muller guilty the drugs distributed by Muller had to be the "but for" cause of Brundige's death. <u>Id.</u> at 12–13. Given the Court's instructions regarding the elements of the offense and the appropriate burden for causation, there was no need for the verdict form to reiterate every legal element or burden of proof. <u>United States v. Brown</u>, 669 F.3d 10, 31 (1st Cir. 2012). As the jurors were properly instructed on the "but for" causation in the court's instructions, Muller cannot be said to have been prejudiced by counsel's failure to object to the instructive language on causation not being reiterated on the verdict form. Relief on the claim in Ground Four is due to be denied.

**E. Ground Five**

Lastly, Muller contends that the cumulative effect of counsel's actions discussed in Grounds One through Four denied him due process and effective assistance of counsel. The Eleventh Circuit recognizes that the "cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of a constitutional right to a fair trial, which calls for reversal." <u>United States v. Baker</u>, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation omitted), <u>abrogated on other grounds by</u> <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006). Of course, where there is no error or only a single non-prejudicial error, there can be no

cumulative error. <u>United States v. Allen</u>, 269 F.3d 842, 847 (11th Cir. 2001). Because Muller has failed to demonstrate any errors, let alone a single non-prejudicial error, he has no claim to relief under the cumulative error doctrine. <u>United States v. Ochoa</u>, 941 F.3d 1074, 1106 (11th Cir. 2019) (citation omitted).

## IV.   Certificate of Appealability

If Muller seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Muller "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

<u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.    Muller's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 3) is **DENIED**.

2.    The Clerk is directed to enter judgment in favor of the United States and against Muller, and close the file.

3.    If Muller appeals the denial of the motion, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 6th day of March, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

JaxP-12
Copies:
Trumaine Muller #70521-018
Counsel of record